# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANT R. KASBARIAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:18-cv-00122-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(ECF Nos. 13, 14, 17)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Shant R. Kasbarian ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Plaintiff suffers from atrial fibrillation, kidney stones, bilateral hernias, and depressive and anxiety disorders. For the reasons set forth below, the Court recommends that Plaintiff's Social Security appeal be granted.

/ / /

/ / /

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 7, 2014.  (AR 75.)  Plaintiff's applications were initially denied on September 10, 2014, and denied upon reconsideration on March 13, 2015.  (AR 91-94, 97-101.)  Plaintiff requested and received a hearing before Administrative Law Judge Sheila Walters ("the ALJ").  Plaintiff appeared for a hearing on August 25, 2016.  (AR 30-60.)  On December 15, 2016, the ALJ found that Plaintiff was not disabled.  (AR 12-25.)  The Appeals Council denied Plaintiff's request for review on November 21, 2017.  (AR 1-3.)

### A.    Hearing Testimony

Plaintiff testified at a hearing on August 25, 2016.  (AR 32-55.)  Plaintiff appeared at the hearing without representation and the ALJ discussed the right to representation at the hearing with Plaintiff.  (AR 32-33.)  Plaintiff stated that he understood his rights and had the good Lord to help him and waived his right to representation.  (AR 33-34, 135.)

Plaintiff was born on July 25, 1964, and was 52 years old on the date of the hearing.  (AR 39.)  Plaintiff is married and lives with his wife and adult daughter.  (AR 39-40.)  Plaintiff's wife does in-home support services and his daughter just received her teaching credential in special education and substitute teaches once or twice a month.  (AR 42.)  Plaintiff is on Medi-Cal.  (AR 43.)  He received disability for one year.  (AR 43.)

Plaintiff has a driver's license and does drive.  (AR 40.)  Some weeks he will not drive and other weeks he will take his wife to the grocery store or will go to visit his mother who is ill.  (AR 40.)  On average, Plaintiff drives two to three times per week.  (AR 40-41.)  Normally, Plaintiff or his daughter will drive when he needs to get somewhere.  (AR 41.)

Plaintiff graduated from high school and obtained a diploma.  (AR 41.)  He also received an associates degree and a Bachelor of Science degree in business.  (AR 41.)  He is able to read and write in English and can do basic math.  (AR 42.)  Plaintiff worked for a bank for twenty-five years.  (AR 42.)

Plaintiff gets up in the morning and prays a lot. (AR 44.)  He reads his bible and he and

his wife will watch a local Christian station.  (AR 44.)  He stays in his pajamas all day.  (AR 44.)  He will go into his bedroom and read some more scripture to help him throughout the day.  (AR 44.)  Plaintiff's wife does the housework.  (AR 44.)  His daughter helps with the grocery shopping and his wife and daughter do the laundry.  (AR 44.)  His wife does the cooking.  (AR 44.)

Plaintiff does not attend church.  (AR 45.)  He does not work at all.  (AR 45.)  He does not do any volunteering.  (AR 46.)  He has not looked for work since he stopped working and has had no vocational training.  (AR 46.)

Plaintiff stopped working because he was experiencing a lot of stress.  (AR 46.)  He knew there was something medically wrong with him, but he did not know what at the time.  (AR 46.)  He has had one thing after another since he stopped working.  (AR 46.)  He had kidney stones twice, two hernia surgeries, seen a urologist and a cardiologist for his heart.  (AR 46.)  He has had atrial fibrillation in the past and wants to be around for his wife and daughter.  (AR 46.)  Plaintiff has pain that goes from the top of his head to the bottom of his feet.  (AR 47.)  He is recovering from a hernia surgery one month ago.  (AR 47.)  He has nerves that have been hurting tremendously over the years.  (AR 47.)  At first the doctors thought it was the hernia, but they want to cut a nerve to reduce his chronic pain but he was uncomfortable with that.  (AR 47.)  He prayed about it and the doctor said there may be other ways to repair his hernia without cutting the nerve.  (AR 47.)  But his pain has not stopped since the surgeries.  (AR 47.)

Plaintiff had hernia surgery on the left side in July 2016 and hernia surgery on the right around March of 2015.  (AR 47-48.)  Plaintiff sees his regular doctor, Dr. Diego, every three months or so.  (AR 48.)  Plaintiff takes medication for his heart and cramping in his abdomen,  (AR 49.)  He does his best to stay away from prescription medication because he is afraid of becoming addicted to them.  (AR 49.)  He leaves it for the Lord to heal him and he takes over the counter Advil to help him through the pain.  (AR 49.)

Plaintiff does not walk because it hurts.  (AR 50.)  It hurts behind his head and he feels like it snaps or bursts and it moves his face and prevents him from walking.  (AR 50.)  His lower back hurts constantly.  (AR 50.)  They were going to look into his back pain after his hernia

surgery.  (AR 50.)  He is not paralyzed so he does walk and dresses himself and can get around the house.  (AR 50.)  If he stands for a little while it hurts tremendously.  (AR 51.)  If he tries to walk, he immediately has to rest on the sofa or in bed.  (AR 51.)  When he sits up it hurts his abdomen so he tries to lay down.  (AR 51.)  When he lays down he keeps his hand away from his chest because it hurts his heart when he puts pressure.  (AR 51.)  Plaintiff would not state how long that he can walk.  (AR 51.)

Plaintiff sits, but not upright.  (AR 51.)  He lays a majority of the time.  (AR 51.)  He can sit in a chair for five to ten minutes.  (AR 51.)  Then, he has to recline and put his feet up.  (AR 51.)  When he puts his feet up it starts hurting him.  (AR 51.)  Plaintiff does not lift anything.  (AR 51.)  His wife and daughter pick everything up for him.  (AR 52.)  Plaintiff brushes his teeth and showers but does not do anything else.  (AR 52.)  He leans on his side when he reads the bible because if he holds it up it will hurt him.  (AR 52.)  He has to rest on a pillow.  (AR 52.)

Plaintiff watches television but gets distracted easily.  (AR 52.)  He gets agitated easily and it is uncomfortable for him to spend time with other people.  (AR 52.)  His loves his wife and daughter but it is stressful at times.  (AR 52.)  Getting along with his friends makes him feel uncomfortable so he would rather not disrespect anyone.  (AR 53.)  He does not associate with his neighbors.  (AR 53.)  Crowds make him feel uncomfortable.  (AR 53.)  Plaintiff tries to avoid people.  (AR 53.)

Plaintiff handles stress by praying.  (AR 53.)  He listens to relaxing music that takes him through breathing exercises to calm his nerves and relax his mind.  (AR 53.)  He saw a mental health professional a year ago but is not currently seeing anyone.  (AR 54.)  He will not take mental health medication because he does not want to get addicted to it.  (AR 54.)

Plaintiff does not have asthma but he has problems breathing.  (AR 54.)  His vision is not getting any better and his hearing is becoming poorer, but he can hear.  (AR 54-55.)  Plaintiff has not been prescribed glasses or a hearing aid.  (AR 55.)

Linda M. Ferra, a vocational expert ("VE") also testified at the hearing.  (AR 55-58.)

**B.      ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 30, 2018.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 19, 2013.

- Plaintiff has the following severe impairments: history of atrial fibrillation and depressive and anxiety disorders.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. He is able to perform simple, repetitive tasks and is precluded from work at a production rate pace, such as sustained fast-paced activity or work with requirements for meeting explicit quotas, deadlines, or schedules. However, work at a normal rate pace is not ruled out. He is precluded from interaction with the public and is limited to occasional interaction with supervisors and coworkers. He is further precluded from climbing ladders, ropes, and scaffolds, and hazards, such as work at unprotected heights and with machinery.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on July 25, 1964, and was 49 years old which is defined as a younger individual age 18-49 on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not Plaintiff has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from November 19, 2013, through the date of this decision.

(AR 17-25.)

**III.**

**LEGAL STANDARD**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

6

Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

### DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ's finding that he had no exertional limitations is error for the following reasons. Plaintiff contends that the ALJ erred by finding that his hernias were nonsevere at the second step of the sequential evaluation. Plaintiff asserts that the ALJ misread the record to find that his symptoms did not last at least twelve continuous months. Plaintiff contends that his symptoms began in December 2014 and he continued to experience groin pain until he eventually had hernia surgery in July 2016, and the pain continued even after the surgery. Plaintiff also argues that the ALJ erred by rejecting Dr. Malik's opinion that Plaintiff was only able to perform medium work; by rejecting the opinion of Dr. Shiovitz that Plaintiff's anxiety prevented him from working; and by considering Plaintiff's impairment's individually rather than in combination. Finally, Plaintiff argues that the ALJ erred by discrediting his symptom testimony.

Defendant counters that since the ALJ continued on in the sequential evaluation process it is irrelevant that the ALJ did not find his hernia severe at the second level. Further, Defendant

contends that Plaintiff did not explain how his hernia would limit him further than the residual functional capacity found by the ALJ. Defendant also argues that the ALJ properly considered the medical opinion evidence and provided legally valid reasons to discount those opinions that were not supported in the record. Defendant contends that the ALJ properly considered Plaintiff's combined impairments and Plaintiff has not shown how his impairments limited him beyond those finding in the residual functional capacity. Finally, Defendant states that Plaintiff has not challenged any of the specific factors the ALJ articulated and does not argue any error as it would relate to the specific evidence in this case; and therefore, Plaintiff has conceded that the ALJ properly weighed the factors against him.

Plaintiff replies that the ALJ erred by finding the he is capable of doing work at all exertional levels and this is based on insubstantial evidence. Plaintiff contends that the ALJ erred by relying on the report of the consultative examiner rather than his treating physician.

### A.    The ALJ Erred at Step Two in Finding that Plaintiff's Hernia Was Not Severe

Plaintiff argues that the ALJ erred by finding that his hernias were non-severe at step two of the sequential evaluation process. Plaintiff contends that the record demonstrates that his hernias were severe for a period of twelve months or longer and that he was recommended for a third hernia surgery. Defendant counters that the ALJ continued on in the sequential evaluation process and therefore it is irrelevant whether whether the hernia was found to be non-severe. Further, Defendant contends that Plaintiff has not shown that his hernia was a severe impairment. Plaintiff replies that the ALJ's failure to consider the hernia severe at step two resulted in no consideration of the impairment at step four and that the residual functional capacity assessment was flawed, incomplete and not supported by substantial evidence.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['】s ability to work.' " Smolen, 80 F.3d at 1290 (citations omitted). Step two is a "de minimis screening devise to dispose of groundless claims." Id. An ALJ can only find that claimant's impairments or combination of impairments are not severe "when his conclusion is

clearly established by medical evidence." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28). In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity. Smolen, 80 F.3d at 1290.

Symptoms are not medically determinable physical impairments and cannot by themselves establish the existence of an impairment. Titles II & Xvi: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996). In order to find a claimant disabled, there must be medical signs and laboratory findings demonstrating the existence of a medically determinable ailment. Id. "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings. . . ." Id.

In considering Plaintiff's history of hernias at step two, the ALJ found,

> The medical evidence record also shows a history of inguinal hernias Exhibits 5F 7F 8F 12F 14F and 16F. The claimant was first diagnosed with bilateral inguinal hernias in December 2014, where it was noted that both were easily reducible Exhibit 5F/3. Nevertheless, the claimant elected to have his right inguinal hernia surgically repaired in March 2015 Exhibit 7F. In October 2015, the claimant had a normal abdominal CT scan and clinical examination findings revealed his abdomen was normal other than the left inguinal hernia Exhibit 8F/49. By April 2016, the claimant's left inguinal hernia was diagnosed as symptomatic and an umbilical hernia and a recurrent less symptomatic right inguinal hernia were also discovered Exhibit 12F. In July 2016, the claimant underwent a robotic left inguinal hernia repair with mesh Exhibit 14F. Upon post-surgical follow-up a month later, the claimant's left hernia had resolved Exhibit 16F/4. However, the claimant continued to complain of pain from multiple migratory sites Id. The claimant's physician noted that the claimant's complaints have been similar since 2013 and that he possibly has a different condition causing those symptoms rather than the hernias Id. Moreover, the claimant testified at the hearing that he only uses Advil to relieve his pain symptoms Hearing Testimony. Considering the above the undersigned finds the claimant's history of hernias are non-severe as they have not resulted in significant symptoms lasting at least 12 continuous months and otherwise do not more than minimally affect the claimant's ability to perform basic work activities.

(AR 18.)

On December 16, 2014, Dr. Shiovitz noted that Plaintiff had some pain and bulging in the right inguinal area and Plaintiff was diagnosed with a right inguinal hernia and it was noted that

Plaintiff still had a left inguinal hernia, both which were easily reducible. (AR 258.) On March 19, 2015, Plaintiff had surgery for his right hernia. (AR 267-68.)

On July 7, 2015, Plaintiff reported that he had been having left lower quadrant abdominal pain over the past several months. (AR 293.) Dr. Cimino did not think that Plaintiff's pain was caused by a hernia, but was suggestive of diverticulitis or focal inflammatory change. (AR 293.) Plaintiff had a normal examination and no hernia was discovered. (AR 294-95.) Plaintiff was diagnosed with abdominal pain with possible diverticulitis. (AR 295.)

On October 10, 2015, Plaintiff was seen in the emergency room for moderate left quadrant abdominal pain with gradual onset. (AR 317.) Plaintiff's physical examination was normal except for a left inguinal hernia. (AR 319.) He was diagnosed with a unilateral recurrent inguinal hernia without obstruction or gangrene. (AR 327.)

On November 23, 2015, Dr. Eve noted that after a colonoscopy, Dr. Plotzker decided a left inguinal hernia could be the culprit for Plaintiff's pain.[1] (AR 332.) He further noted that in March 2015, Dr. Cimino repaired a right inguinal hernia as this was the side that the hernia was palpable on exam. (AR 332.) Additionally, in October 2015, Plaintiff had a CT scan in the emergency department showing bilateral fat containing inguinal hernias and an umbilical hernia. (AR 332.) Plaintiff's examination was generally normal, except that an umbilical hernia was discovered --reducible. An inguinal hernia was discovered --reducible on the left. (AR 334.)

On December 17, 2015, an unidentified doctor noted an inguinal hernia. (AR 336.) Plaintiff had a hernia repair consult with Dr. Coirin on March 21, 2016, and was found to have a reducible inguinal hernia. (AR 339.)

On April 26, 2016, Dr. Carter noted that Plaintiff had a prior history of right sided Bassini hernia repair without mesh and since that repair he has had mild intermittent right groin discomfort. (AR 373.) The CT scan from October showed a direct recurrence which contained fat only. (AR 373.) Plaintiff also had a small fat-containing umbilical hernia. (AR 373.)

---

[1] It is not clear where Dr. Eve got this information as the colonoscopy does not reflect such a finding nor does the court find such a finding by Dr. Plotzker in the record and Dr. Ploztker did not find a hernia on examination. (AR 293-95, 305-07.)

Plaintiff had a normal exam other than a hernia confirmed positive in the right inguinal area and confirmed positive in the left inguinal area. (AR 375.) Dr. Carter advised that the left hernia be repaired first, with division of the ilioinguinal nerve in an effort to minimize the risk of chronic pain and for Plaintiff to completely recover before tackling the right hernia. (AR 376.) He anticipated it would take six to twelve months for Plaintiff to recover before proceeding to repair the hernia on the right side. (AR 376.)

On May 3, 2016, Dr. Eve noted that Plaintiff saw Dr. Carter for a second opinion and that due to Plaintiff's pain, Dr. Carter wanted to cut the nerve for pain control, but Plaintiff did not want this done and returned to see Dr. Eve. (AR 402.) Plaintiff reported that his right inguinal recurrent hernia was more symptomatic. (AR 402.) Plaintiff had a normal examination other than a hernia. (AR 404.)

On May 4, 2016, Plaintiff had a CT of the abdomen and pelvis with showed 1) a stone in the left lower pole; 2) bilateral low-density renal cortical lesions which are most likely cysts; 3) left inguinal hernia containing a short nondistended loop of the sigmoid colon; 4) small right inguinal fat-containing hernia with surrounding the scarring possibly related to herniorrhaphy; and 5) hepatic steatosis. (AR 370.)

On July 1, 2016, Dr. Eisenberg noted,

> The patient has a long and rambling history that involves kidney stones which he had a previous ESWL by Dr. Fauconier in May or June of 2015. He has also had inguinal pains. He had inguinal hernia repair on the right side previously with Dr. Cimino and now has a left inguinal hernia and is being set up for repair with Dr. Eve I believe in a few weeks. The patient complains of groin pain down the left side. His CT scan was reviewed as well as his urorisk profile which shows elevated uric acid and phosphorous in his urine. We discussed dietary steps for stone prevention. Also, is advised that the 3 mm stone in the kidney does not need treatment and should not be causing any symptoms. . . No source of his groin discomfort other than the hernia could be found and the patients stone does not need treatment.

(AR 357.)

Plaintiff had a left hernia repair on July 14, 2016. (AR 387-388.) At his post-op appointments on August 1, 2016, and August 15, 2016, Dr. Eve noted that the left inguinal hernia is resolved. (AR 395, 392.)

Based on review of the medical record, the Court finds that Plaintiff submitted sufficient

evidence of abdominal pain that was suspected to be caused by his hernias to pass the de minimis threshold of step two. Although the ALJ found that Plaintiff had not had significant symptoms that lasted at least 12 continuous months, Plaintiff had a right hernia surgery on March 19, 2015, and continued to complaint of abdominal pain that was suspected to be caused by his hernias. He had left hernia surgery on July 14, 2016 and was to be scheduled for a second right hernia surgery after he recovered from the left hernia surgery. Further, at the hearing, Plaintiff testified that he had hernia surgery and that the has been hurting for years. (AR 47.) He also testified that his doctors thought that the hernia was causing his pain and they wanted to cut a nerve to reduce his chronic pain. (AR 47.) Plaintiff testified that his pain had not stopped since his surgeries. (AR 47.) The Court finds that the ALJ erred by finding Plaintiff's hernias to be non-severe at step two.

Any error in failing to find impairment severe at step two is harmless where the ALJ considers the limitations posed by the impairment in the step four analysis. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Although the ALJ noted that Plaintiff complained of diffuse pain all over his body, and difficulty walking, sitting and lifting (AR 21), the ALJ did not address Plaintiff's abdominal pain or the medical findings in the record in developing Plaintiff's residual functional capacity. In considering Plaintiff's physical capabilities, the ALJ stated,

> In terms of the claimant's alleged history of atrial fibrillation, the record reflects diagnoses of the same throughout the relevant period Exhibits 1F/9 4F and 13F17. However, despite these diagnoses, the claimant has consistently had normal chest and cardiovascular clinical examination findings Exhibits 1F/9 4F 8F/3/11/24/49 and 13F. Moreover, the claimant underwent a cardiovascular stress test in June 2016 of which the results were also normal Exhibit 13F. During his physical consultative evaluation in August 2014, the claimant demonstrated the ability to sit, stand, and lie down without any difficulty or hesitation Exhibit 4F. Likewise, he was able to remove and put back on his shoes and socks without any difficulty or hesitation Id. The claimant further demonstrated full strength, range of motion, reflexes, and sensation throughout, and had negative straight leg raises Id. In light of the above, the undersigned finds the claimant can perform work at all exertional levels. However, in light of this history to avoid injury should the claimant experience an onset of symptoms the undersigned finds he is precluded from climbing ladders, ropes, and scaffolds, and from hazards, such as work at unprotected heights or with machinery.

(AR 21.)

While the ALJ considered Plaintiff's atrial fibrillation, he did not address Plaintiff's

1   abdominal pain or hernia symptoms. The Court finds that the ALJ's finding that Plaintiff's

2   hernias were nonsevere at step two is not supported by substantial evidence in the record and the

3   ALJ erred by failing to consider the limitations imposed by Plaintiff's hernias in developing his

4   residual functional capacity findings. Accordingly, this matter should be remanded for further

5   proceedings for the ALJ to reconsider Plaintiff's residual functional capacity in light of his

6   hernia symptoms.[2]

7   **B.      The ALJ's Mental Residual Functional Capacity Findings**

8   Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Shiovitz that he was

9   precluded from working due to his anxiety. Plaintiff contends that the ALJ did not consider the

10  records of Dr. Gill or LCSW Morrison who treated Plaintiff and that Dr. Shiovitz consulted with

11  Dr. Turek, a psychologist who examined Plaintiff and opined that he was unready to return to

12  work. Finally, Plaintiff contends that the ALJ erred because he did not accept or reject Dr.

13  Turek's opinion.

14  Defendant counters that the ALJ properly evaluated the mental opinion evidence and

15  appropriately accommodated Plaintiff's mental limitations in the residual capacity finding.

16  Defendant argues that the ALJ noted that Plaintiff had generally normal mental examinations,

17  that his mental symptoms were effectively controlled by conservative measures, and that at the

18  hearing Plaintiff testified that he did not take medication for his symptoms and was not seeing a

19  mental health profession but prayed, listened to relaxing music and did breathing exercises.

20  Defendant states that the ALJ appropriately considered the opinions of the state agency

21  physicians and that Plaintiff's disagreement with the ALJ's assessment of the evidence is not a

22  grounds for reversal.

23  Plaintiff replies that it was error for the ALJ to rely on the report of the consultative

24  examiner because he only saw Plaintiff once and did not review Plaintiff's treatment records for

25  the relevant time period. Further, Plaintiff argues that the ALJ did not adopt the opinion of the

---

26  [2] In light of the fact that the Court is recommending this action be remanded for further proceedings on the physical
27  residual functional capacity, the Court declines to address Plaintiff's arguments regarding the residual functional
    capacity findings, the weight provided to the physician opinions, or the failure to consider the combined impact of
    the multiple impairments on his ability to work or Defendant's argument that substantial evidence supports the
28  residual functional capacity finding.

consultative examiner in its entirety and failed to provide any reasons for the portions of the opinion that were rejected.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record.  Id..

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

In this instance, there are contradictory opinions regarding Plaintiff's mental limitations in the record, so the treating physician's opinion may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan, 528 F.3d at 1198.

The ALJ considered that Plaintiff had been diagnosed with depression and anxiety

disorders throughout the relevant time period. (AR 21.) The ALJ noted that although the record reflected that Plaintiff was taking sertraline, an antidepressant medication, in March of 2014 (AR 235), and that Plaintiff stated that he felt this medication was helping (AR 246), Plaintiff admitted that he never took the medication due to fear of side effects (AR 260). (AR 21.) Instead of taking his prescription medication, Plaintiff choose to rely on his religious beliefs to treat his psychiatric symptoms (AR 245, 259, 261, 262) and used breathing techniques and relaxing music to treat his symptoms (AR 53). (AR 21.) The ALJ also considered that Plaintiff participated in counseling between June 2015 and August 2015 but reported that he was traumatized by the doctor having chest pains during a session. (AR 21, 288, 289, 290, 292, 348.)

The ALJ found that despite Plaintiff's alleged mental health symptoms and lack of treatment compliance his mental status examination findings have been grossly normal on a consistent basis. (AR 21-22.) While Plaintiff occasionally presented as mildly anxious or depressed or tearful when discussing symptoms and stresses (AR 245, 236), he has otherwise presented as well-appearing, pleasant, cooperative, in no apparent distress, and with appropriate mood and affect. (AR 22, 235, 253, 258, 294, 298, 310, 375, 384-85.) Plaintiff has also consistently demonstrated good eye contact, normal behavior, normal speech, normal attention and concentration, and normal memory. (AR 22, 249-50, 288, 289, 290, 292.)

### 1. Plaintiff's Treating Providers

The ALJ considered the opinions of Dr. Shiovitz. (AR 23.) Between November 2013 and December 2014, Dr. Shiovitz opined that, due to his mental limitations, Plaintiff was unable to work. (AR 23, 237, 238.) In January 2015, Dr. Shiovitz opined that Plaintiff was unable to focus and prioritize and had difficulty in interpersonal interactions which prevented him from working for the foreseeable future. (AR 23, 262.) The ALJ rejected Dr. Shiovitz opinion that Plaintiff was unable to work because an opinion that the claimant is unable to work is reserved for the Commissioner. (AR 23.)

Under the regulations, a medical opinion is a statement from an acceptable medical source that reflects judgment about the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(a)(1). Opinions on some issues are not medical opinions, but are opinions on

issues reserved for the Commissioner. 20 C.F.R. § 404.1527(a)(1). One such issue is that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). The ALJ does not give any special significance to opinions on issues that are reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(3). The ALJ properly rejected Dr. Shiovitz' opinion that Plaintiff was unable to work.

However, the ALJ did take the opinions into account in deciding disability. (AR 23.) The ALJ found that considering Plaintiff's consistently normal mental status examinations, including normal attention and concentration, appearance as pleasant, cooperative and with appropriate mood and affect, that Dr. Shiovitz' opinion was over restrictive. (AR 23.) The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. The ALJ provided a specific and legitimate reason to find that Dr. Shiovitz's opinion was overly restrictive.

While the ALJ found that Dr. Shiovitz's opinion was inconsistent with his generally normal mental findings, Plaintiff argues that Dr. Gill and LCSW Morrison found that plaintiff had rigid cognition and firm thought structure which they termed as cognitive errors and that he had meta cognition, was engaged in splitting and had some personality disordered characteristics. (AR 289, 290, 292.) Plaintiff argues that the ALJ failed to mention these findings, but the ALJ referenced these specific records in his opinion. (AR 21-22.)

On April 6, 2015, Plaintiff was seen by Dr. Gil who noted that he was alert and oriented with appropriate mood and affect. (AR 290.) He was found to have normal judgment and insight and normal memory and concentration. (AR 290.)

On June 22, 2015, Plaintiff was seen by LCSW Morrison who noted "patients cognition is rigid; thought structure is firm; patient cognitive errors (especially black and white thinking) are apparent/observed; intervened with patient to work toward increasing insight re: cognition patterns and their impact on depressed mood and symptoms; increase affective and cognitive tolerance of bodily pain; provide supportive therapy." (AR 289.) On this same date, Dr. Gil noted that Plaintiff was alert and oriented with appropriate mood and affect. (AR 289.) Plaintiff was found to have normal insight and judgment and normal attention span and concentration.

(AR 289.)

On August 6, 2015, Plaintiff was seen by LCSW Morrison who noted that Plaintiff had difficulty with meta cognition, insisting that just talking was helpful but could not identify how and he was given feed back about splitting. (AR 292.) However, on this same date, Dr. Diego again found that Plaintiff was alert and oriented with appropriate mood and affect. (AR 292.) Plaintiff had normal judgment and insight and normal attention span and cognition. (AR 292.) Despite LCSW Morrison's findings, the record reflects that Plaintiff's mental examination, including insight, judgment, attention, and concentration, were normal as the ALJ noted in his opinion.

Plaintiff also argues that the ALJ failed to address the opinion of Dr. Turek which he claims to be an additional error. On February 11, 2014, there is a telephone note in the record from Dr. Shiovitz.

> Phone call from Dr. Turek phone number 747-800-1138 indicates that Dr. Turek is an independent examiner that the patient has given consent for Dr. Turek to discuss his case with us. Dr. Turek has advised that the patient has had ongoing anxiety made worse with the patient's current work situation which has caused him not only the emotional stress of anxiety but physical stresses including chest discomfort tightness in his throat and difficulty sleeping. Dr. Turek is advised that the patients off-work time has been extended to 05/01/2014 due to his clear unreadiness to return to the workplace. It is explained that the patient feels that he has been treated with very little respect given his 25 years of service to his current employer.

(AR 236.)

"The Secretary . . . need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.' " <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir.1981)). Dr. Turek's opinion was not significant probative evidence that required discussion by the ALJ. Here, Dr. Turek's opinion that Plaintiff had ongoing anxiety made worse by his current work situation does not address any functional limitations that the ALJ would be required to consider. (AR 236.) The ALJ found that Plaintiff's anxiety was a severe impairment and specifically considered Dr. Gill's opinion that Plaintiff was unable to work until May 1, 2014 due to his unreadiness to return to work in determining Plaintiff's mental residual

functional capacity. (AR 22.) The ALJ did not err by failing to specifically address the opinion of Dr. Turek.

### 2. Dr. DeBattista

Plaintiff argues that the ALJ erred by not addressing all the limitations opined by Dr. DeBattista.

The ALJ gave considerable weight to the July 2014 consultative examination by Dr. DeBattista. (AR 22.) Dr. DeBattista conducted a consultative examination on July 25, 2014. (AR 248-250.) Although Plaintiff argues that Dr. DeBattista did not review medical records for the relevant time period, Dr. DeBattista's report indicates that he reviewed Dr. Shiovitz' records. (AR 248.) Dr. DeBattista noted that Plaintiff had been advised to be on sertraline but preferred not to be on psychiatric medication and that he had been referred to a therapist but only saw him for two visits. (AR 248.)

On examination, Dr. DeBattista noted that Plaintiff made good eye contact and good interpersonal contact. (AR 249.) Plaintiff was generally cooperative and was able to volunteer information spontaneously. (AR 249.) There was no psychomotor agitation or retardation. (AR 249.) Plaintiff appeared genuine and truthful with no evidence of exaggeration or manipulation. (AR 249.)

Plaintiff's thought processes were coherent. and organized. (AR 249.) There was no tangentiality or loosening of associations. (AR 249.) Plaintiff's thought content was relevant and non-delusional. (AR 249.) There was no bizarre or psychotic thought content and no current homicidal or paranoid ideation. (AR 249.) Plaintiff denied recent auditory or visual hallucinations and did not appear to be responding to internal stimuli during the interview. (AR 249.)

Plaintiff's mood was depressed and his affect was restricted. (AR 249.) He endorsed some vegetative features. (AR 249.) Plaintiff was very soft-spoken and there was a relatively low amplitude to his speech. (AR 249.)

Plaintiff was alert and oriented in all spheres and appeared to be of at least average intelligence. (AR 249.) He could recall three of three objects immediately and one of three

objects after five minutes.  (AR 249.)  His fund of knowledge was intact.  (AR 249.)  Plaintiff could perform serial threes to 79 and could spell the word "WORLD" forward and backward. (AR 249.)  He could perform simple multiplication and was able to follow the conversation well. (AR 249.)  Insight and judgment appeared to be intact regarding his current situation.  (AR 250.)

Dr. DeBattista diagnosed Plaintiff with depression and opined that he had a global assessment of functioning Global Assessment of Function ("GAF") Score[3] of 58.[4]  (AR 23, 250.) The ALJ found that this GAF score suggested moderate symptoms or any moderate difficulty in social occupational or school functioning.  (AR 23.)

Based on the examination, Dr. DeBattista opined that Plaintiff was able to understand, remember, and carry out simple one or two-step job instructions but was unable to do detailed or complex instructions.  (AR 23, 250.)  Plaintiff's ability to relate and interact with coworkers and the public was moderately impaired.  (AR 250.)  His ability to maintain concentration and attention, persistence, and pace was mildly impaired.  (AR 23, 250.)  Plaintiff's ability to associate with day-to-day work activity including attendance and safety was moderately impaired.  (AR 23, 250.)  His ability to accept instructions from supervisors was mildly impaired. (AR 23, 250.)  Plaintiff's ability to maintain regular attendance in the work place and perform work activities on a consistent basis was mildly impaired.  (AR 23, 250.)  His ability to perform work activities without special or additional supervision was mildly impaired.  (AR 23, 250.)

The ALJ found that Dr. DeBattista's opinion limiting the claimant to simple job duties is supported by the claimant's alleged difficulties with concentration and memory considered with his otherwise normal mental status examination findings.  (AR 24.)  The ALJ further stated that

---

[3] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations."  Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)).

[4] "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or coworkers)."  Cornelison,  2011 WL 6001698, at 4 n.6 (citing  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

Dr. DeBattista's opinion limiting Plaintiff to simple job duties is supported by Plaintiff's alleged difficulties with concentration and memory considered with his otherwise normal mental status findings. (AR 24.) However, Dr. DeBattista did not only limit Plaintiff to simple job duties, but found that Plaintiff was limited to simple one to two step job instructions. (AR 250.) Plaintiff argues that although Dr. DeBattista found that Plaintiff was able to do able to understand, remember, and carry out simple one or two-step job instructions, the ALJ found that he could perform simple repetitive tasks. Plaintiff contends that the the full range of simple repetitive tasks also encompasses both one to two step job instructions and detailed but involved instructions.

In <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1002 (9th Cir. 2015), the Ninth Circuit addressed the reasoning levels that apply in Social Security cases.

> There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex). <u>Id.</u>, App. C, § III, 1991 WL 688702. The lowest two levels are:
>
> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

<u>Rounds</u>, 807 F.3d at 1002–03. In considering the two lowest levels, Level 1 and Level 2, the Court found that there was an apparent conflict between a limitation to one and two step tasks and Level 2 reasoning which requires carrying out "detailed but uninvolved written or oral instructions." <u>Rounds</u>, 807 F.3d at 1003.

Since <u>Rounds</u>, courts find that a limitation to simple repetitive tasks does not account for a doctor's functional limitation of the claimant to one to two step job instructions. <u>Wilson v. Colvin</u>, No. 16-CV-01971-WHO, 2017 WL 1861839, at *6 (N.D. Cal. May 9, 2017) (collecting cases); <u>Perez v. Berryhill</u>, No. 2:17-CV-01800-GJS, 2018 WL 1918539, at *2 (C.D. Cal. Apr. 23, 2018) (Ninth Circuit case law makes it clear that limitation to simple repetitive tasks and simple one to two step instructions are not equivalent). It appears from the opinion that the ALJ did not recognize the distinction between the limitation to one to two step job instructions and

simple repetitive tasks. While the ALJ noted Plaintiff's generally normal mental examination findings, he did not address Dr. DeBattista's finding that Plaintiff was limited to simple one to two step job instructions and was unable to do detailed or complex instructions. (AR 250.) Rather, the ALJ found that Dr. DeBattista had limited Plaintiff to simple tasks without addressing the limitation to simple one and two set instructions. This was error.

Defendant argues that the ALJ also relied on the opinions of the agency examiners who opined that Plaintiff could perform simple repetitive tasks. However, the ALJ was still required to give a reasoned decision for why he was rejecting Dr. DeBattista's limitations in favor of the agency examiners' findings. Here, the ALJ did not provide a reason to reject Dr. DeBattista's limitation to simple one to two step job instructions but appears to have found that Dr. DeBattista limited Plaintiff to simple tasks.

The Court recommends that this action be remanded for the ALJ to consider Dr. DeBattista's opinion that Plaintiff was limited to simple one to two step job instructions.

**C.      Adverse Credibility Finding**

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff's symptom testimony was not credible.

Defendant counters that as Plaintiff has not specifically challenged any of the factors that were articulated by the ALJ or argued with any specificity as it relates to the specific evidence, Plaintiff has conceded that the ALJ properly weighed the factors against him. Defendant argues that the ALJ noted the lack of objective findings to support his alleged symptoms and considered Plaintiff's conservative treatment history and his failure to comply with treatment recommendations by his physicians. Defendant further contends that the ALJ properly found that Plaintiff's daily activities were inconsistent with his symptom testimony.

Plaintiff replies that the only factor articulated by the ALJ to reject his credibility was the lack of objective findings which is inadequate to reject his testimony.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or

symptoms is credible, requires the ALJ to engage in a two-step analysis. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. <u>Smolen</u>, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. <u>Lingenfelter</u>, 504 F.3d at 1040; <u>Thomas</u>, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting <u>Smolen</u>, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. <u>Brown-Hunter</u>, 806 F.3d at 492.

Here, while the ALJ discussed factors that could potentially have been used to discredit

Plaintiff's symptom testimony, the ALJ did not make specific findings for the Court to determine that Plaintiff's credibility was rejected on permissible grounds. Moisa, 367 F.3d at 885; see Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Robbins, 466 F.3d at 883) (the ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). For example, the ALJ noted that Plaintiff had told his doctor that he was taking his antidepressant medication and that it was helping, but later admitted that he never took the medication. (AR 21, 245, 246, 260, 261; see also AR 248 (Plaintiff reported he was on sertraline but "did not like the side effects and preferred not to be on a psychiatric medication.").) Plaintiff's inconsistent statements are a clear and convincing reason to find him not credible, Tommasetti, 533 F.3d at 1039; Tonapetyan, 242 F.3d at 1148; however, the ALJ did not state this as a reason to discredit Plaintiff's symptom testimony.

The ALJ also noted Plaintiff's lack of compliance with treatment. (AR 21.) While an "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), again the ALJ did not provide this as a basis for the adverse credibility finding nor did she explain why Plaintiff's explanations regarding his failure to comply with treatment were inadequate.

The ALJ also noted that Plaintiff relied on his religious beliefs, to treat his psychological symptoms, uses breathing techniques and listens to relaxing music to alleviate his symptoms and found that his ultra conservative mental health treatment supported his ability to do simple repetitive tasks. (AR 22-23.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). But, again the ALJ did not provide this as a reason to reject Plaintiff's symptom testimony.

While Defendant argues that the ALJ found that Plaintiff's daily activities were inconsistent with his allegations of disabling symptoms, the reference provided is to the record and not the ALJ's opinion. (See ECF No. 14 at 23.) The ALJ did not address Plaintiff's daily activities or find that Plaintiff's symptom allegations were inconsistent with such. In evaluating the opinion, the Court is constrained to review the reasons asserted by the ALJ. Connett v.

1  Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the

2  ALJ's credibility decision based on evidence that the ALJ did not discuss.")

3       The ALJ did find that "the objective medical evidence and level of functional difficulty

4  with respect to his mental impairments do not support the claimant's allegations of disabling

5  conditions."  (AR 22.)  However, the ALJ cannot discredit Plaintiff's pain testimony solely

6  because it is found not to be supported by the objective medical evidence.  Rollins, 261 F.3d at

7  857 (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991).

8       The ALJ failed to articulate clear and convincing reasons to reject Plaintiff's symptom

9  testimony.

10       **D.       Remand**

11       Plaintiff requests that this matter be remanded for payment of benefits or, in the

12  alternative, for further administrative proceedings.  Defendant contends that remand for further

13  proceedings is appropriate.

14       The ordinary remand rule provides that when "the record before the agency does not

15  support the agency action, . . . the agency has not considered all relevant factors, or . . . the

16  reviewing court simply cannot evaluate the challenged agency action on the basis of the record

17  before it, the proper course, except in rare circumstances, is to remand to the agency for

18  additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

19  1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

20  1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

21  decision by the Commissioner 'with or without remanding the cause for a rehearing.' "

22  Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is

23  discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand

24  with instructions to calculate and award benefits when it is clear from the record that the

25  claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.

26       The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

27  must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

28  award benefits: (1) the record has been fully developed and further administrative proceedings

would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

Here, further administrative proceedings are warranted as the record raises a serious doubt that Plaintiff is in fact disabled. Dr. Malik opined that Plaintiff is able to perform medium work. (AR 192-194.) There is no other medical opinion addressing Plaintiff's limitations due to his abdominal issues which appear to be intermittent and mild to moderate and are controlled by over the counter pain medication. (AR 49, 293, 317, 357, 373.) As the ALJ addressed in the opinion, Plaintiff's objective medical and mental examination findings are routinely normal and the issue of whether Plaintiff is able to perform simple routine tasks or is more limited is yet to be determined.

The Court recommends that this action be remanded for further administrative proceedings consistent with this findings and recommendations.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ erred by 1) determining that Plaintiff's hernias were non-severe at step two of the sequential evaluation process; 2) failing to provide a reason to reject Dr. DeBattista's limitation to simple one to two step job instructions; and failing to provide a clear and convincing reason to reject Plaintiff's symptom testimony.

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's appeal from the decision of the Commissioner of Social Security be GRANTED and this matter be remanded

back to the Commissioner of Social Security for further proceedings consistent with this findings and recommendations.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 24, 2019**

_____

UNITED STATES MAGISTRATE JUDGE